IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KALLIATEN SEKHNEB
KHEPERA-BEY,

    *Plaintiff,*

    v.

CITIFINANCIAL AUTO
CORPORATION,

    *Defendant.*

Civil Action No.: ELH-11-3756

**MEMORANDUM OPINION**

KalliAten SekhNeb Khepera-Bey, the self-represented plaintiff,[1] filed suit against defendant CitiFinancial Auto Corporation ("CitiFinancial"), raising several claims about a retail installment sale contract. *See* Complaint (ECF 2, filed November 30, 2011); Amended Complaint (ECF 8, filed December 2, 2011).[2] Defendant filed a "Motion For More Definite Statement" (ECF 13), arguing that the suit was "so vague and ambiguous that CitiFinancial cannot form a proper response, and it would be prejudicial for CitiFinancial to even attempt to do so...." *Id.* at 1. On February 1, 2012, the Court granted the motion (ECF 18), explaining: "Although the Amended Complaint lists numerous causes of action, the content does not make clear the grounds for each claim." *Id.* Plaintiff submitted a "Complaint Affidavit/Amended Definitive Statement" ("Second Amended Complaint," ECF 20) on February 15, 2012, to which he appended several documents.

The Second Amended Complaint spawned the filing of defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal

---

[1] Plaintiff has filed a submission titled "Judicial Notice," ECF 27, in which he lodges "Challenge to Pro Se Chattel Status." He also filed an amended version of that submission. *See* ECF 29.

[2] This case was originally filed in the Circuit Court for Baltimore City. The defendant timely removed the case to federal court (ECF 1), based on diversity of citizenship. *See* 28 U.S.C. § 1332.

Rules of Civil Procedure ("Motion," ECF 22), along with a supporting memorandum ("Memo," ECF 22-1).  Plaintiff opposes the Motion ("Opposition," ECF 23), to which defendant has replied ("Reply," ECF 26).  The Court now rules pursuant to Local Rule 105.6, no hearing being necessary.[3]

### Factual and Procedural Background[4]

This case appears to be rooted in plaintiff's purchase of a motor vehicle from Lanham Ford, Inc. ("Lanham").  The documents appended to the Second Amended Complaint indicate that an individual then named Khaval Stewart[5] purchased a 2003 Nissan from Lanham in 2006.  However, the text of the Second Amended Complaint does not describe the vehicle at issue; the price that was paid for it; the date of the original transaction; the terms of any financing; the amount of the monthly payments; or whether plaintiff is current on such payments.  Nevertheless, plaintiff asserts that the retail installment sale contract was "void ab initio," due to an alleged defect, discussed *infra*.

In his suit, plaintiff alleges that the disputed retail installment contract, appended to the suit, was executed "on or around August 10, 2006."  Second Amended Complaint ¶ 2.  Further, he asserts: "Starting in or around September 10, 2006, without disclosing all material facts to the Plaintiff, Lanham Ford (the original seller), unlawfully assigned a void ab initio retail installment contract to Citifinancial [sic]."  *Id.*  ¶ 6.

---

[3] Plaintiff has filed a "Motion In Support Of Motion For Evidentiary Hearing" (ECF 28). As the Court finds a hearing unnecessary in this matter, ECF 28 is denied.

[4] Because plaintiff is proceeding without counsel, his filings have been "'liberally construed'" and are "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).  Moreover, the Court has construed the facts alleged in the Second Amended Complaint in the light most favorable to plaintiff, as the party opposing the Motion.  *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[5] Plaintiff filed ECF 5, a copy of a "Decree For Change of Name."  It shows that on September 28, 2011, Baltimore City Circuit Court Judge Evelyn Cannon ordered that plaintiff's name be changed from Khaval Accomador Stewart to Kalliaten SekhNeb Khepera-Bey.

Plaintiff alleges that defendant "willfully accepted the void ab initio contract as valid and commenced to defrauded [sic] monies of approximately $19858.23 from the Plaintiff over a period of approximately 4 years." *Id.* ¶ 6.  He also avers that CitiFinancial "had full knowledge there [sic] was no lawfully binding, enforceable retail installment contract in place; as well the defendant knew they had no alternative contract in place with the Plaintiff." *Id.*

According to plaintiff, he "became suspicious in September of 20**10** that he was being defrauded by the defendant and commenced his own in-depth investigation into the defendant's fraud from September 2010 to March 30, 2011…." *Id.* (emphasis in original).  Further, he alleges that defendant was able to "defraud[] a series of monies from the Plaintiff before the Plaintiff became aware he was the victim of an elaborate fraudulent scheme." *Id.*  Presumably, the "fraud" to which plaintiff refers is defendant's attempt to enforce the allegedly "void ab initio" contract, as plaintiff refers to no other conduct on the part of CitiFinancial that would trigger an accusation of fraud.  Nor does plaintiff allege that Lanham, the dealership that sold the vehicle to him, engaged in fraudulent misconduct, even though Lanham apparently completed the disputed contract.

Plaintiff claims that he sustained "further injuries" due to defendant's later "unlawful assignment to Satander Consumer USA, INC." *Id.*  *See also id.* ¶ 4 ("Defendant later "unlawfully assigned the void ab initio retail installment contract to another fraudulent assignee, Satander Consumer USA, INC.").[6]  Plaintiff does not state when the alleged subsequent assignment from CitiFinancial to "Satander Consumer USA, INC." occurred, nor does he specify what "injuries" he

---

[6] Neither Lanham nor "Satander Consumer USA, INC." ("Satander") is named as a defendant in this case.  However, plaintiff brought suit against Satander, alleging, *inter alia*, a violation of the Fair Debt Collection Practices Act,  in a case now pending before Judge Quarles, arising from his purchase of the 2003 Nissan from Lanham.  *See Khaval Stewart v. Santander Consumer USA, Inc., et al,* 11-cv-01269-WDQ.  It is tempting to look to Judge Quarles's case to glean the facts undergirding this case; Santander filed a motion to dismiss that included factual details (ECF 4) and, in an Opinion and Order (ECF 28, 29), Judge Quarles granted the motion, in part. But, in resolving the issues presented here, I decline to go beyond the record of this case.

sustained as a result. Nor does plaintiff suggest that, because the contract is allegedly void, he is obligated to return the vehicle.

The contract in issue, titled "Retail Installment Contract—Simple Interest," has one blank space next to the words, "Seller Signs," on an unnumbered page.[7] But, a signature clearly appears on the adjacent line, next to the word "By." In his Opposition, plaintiff posits that, in his view, the contract is void, and any later assignment and enforcement invalid, because "[t]he original seller Lanham Ford did not sign where the contract instruction demanded their signature for acceptance of the contract but the defendant CitiFinancial accepted the…contract regardless of the fact there [sic] were bla[nk] space(s) to be filled in…." Opposition at 6.[8]

These allegations have led plaintiff to sue defendant in seven counts, some of which are based on multiple statutes, and to seek "compensatory and punitive damages in the sum of $500,000." *Id.* ¶ 5. In particular, plaintiff has lodged the following counts (emphasis in original): "**Violation:** Md. Com. Law, Retail Installment Sales" (Count I); "**Violation:** Md. Comm. Law, Letter of Credit" (Count II); "**Violation:** Maryland Fair Debt Collection Practices Act" (Count III); "**Violation:** Maryland Consumer Protection Act" (Count IV); "**Violation:** FDCPA" (Count V); "**Violation:** Civil Tort" (Count VI); and "**<u>VIOLATIONS: Civil Rico Predicate acts</u>**" (Count VII).[9]

---

[7] Plaintiff appended the first page of the contract, bearing the title, and then three copies of the page bearing the alleged defect. I cannot determine whether the entire contract was appended.

[8] In its Reply, defendant correctly notes that the allegation as to the blank signature line does not appear in the Second Amended Complaint. In its view, "in the Opposition, Plaintiff impermissibly supplements his [Second] Amended Complaint." Reply at 3 n.1 (citing *Saunders v. Putnam Am. Gov't Income Fund*, No. JFM-04-560, 2006 WL 1888906, at *2 n.2 (D. Md. July 7, 2006) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.")). In any event, defendant points to the signature on the "By" line, arguing: "The fact that the signature was not placed immediately above the 'seller signs' signature line does not render the contract 'void ab initio.'" Reply at 3.

[9] Most of plaintiff's claims arise under Maryland statutory law. As to any tort claims, Maryland follows the rule of *lex loci delicti*, which means that the court applies the substantive

Case 1:11-cv-03756-ELH   Document 30   Filed 05/18/12   Page 5 of 17

In its Motion, defendant contends that all of the claims are legally deficient, for various reasons. In general, plaintiff's ten-page Opposition does not respond to defendant's challenges. Rather, it is replete with insults hurled at defendant and defense counsel. For example, plaintiff asserts: "The defendant's motion to dismiss for failure to state a claim upon which relief can be granted and their [sic] memorandum of law are nothing more than intentional red herrings, hoping to beguile the Court and led [sic] the Trier of Fact on a wild goose chase…." *Id*. at 2. Plaintiff refers to defendant's arguments as "legal gibberish." *Id.* With respect to the defendant's assertion that the Second Amended Complaint fails to satisfy Fed. R. Civ. P. 8, plaintiff counters: "They continue to cry about the aesthetics of the complaint...." *Id*. at 5. He also remarks: "Unless the defendant and/or their counsel have decelerated electronic impulses (neurotransmitter molecules) to their various synapses in their brain, then they should be mentally competent enough to understand the charges against them…." *Id.* Further, plaintiff complains that defendant's counsel "continues to cry and bitch," and "whimper and whine," and he urges defendant and its counsel to "**man-up and defend their position on merit**," rather than "blaming the Plaintiff for 'their' defect of miniscule mental awareness…." *Id.* (Emphasis in original). Plaintiff also quotes the text of some of the provisions he has alleged were violated by defendant, and insists that they are "self explanatory." *Id.* at 6. Plaintiff insists that it is not "his duty to school the defendant and their counsel on how to decipher matters of law." *Id.* at 8. And, he refuses to "waste his time rebutting any of the defendant's red herrings," adding that "it doesn't take a genius with a Bar certificate number to conclude that the defendant CitiFinancial unlawful [sic] collections activity violated the MDCPA, the FDCPA, etc." *Id.* at 9.

---

law of the state where the wrong occurred. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648-49 (2007).

**Standard of Review**

As noted, defendant has moved to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that the suit fails to state a claim upon which relief can be granted. When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson, supra,* 551 U.S. at 94, and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But, the rule demands more than bald accusations or mere speculation. *Id*. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if…[the] actual proof of those facts is improbable and…recovery is very remote and unlikely." *Id*. at 556.

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6). *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that the plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Ordinarily, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the

facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, both *Twombly*, 550 U.S. at 570, and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth facts sufficient to "state a claim to relief that is plausible on its face." To establish "facial plausibility," the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If a complaint provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," it is insufficient under the Rule. *Twombly*, 550 U.S. at 555. A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). Put another way, a plaintiff must "nudge[] [his] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570; *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

In resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010). "A court decides whether th[e] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and

7

viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief.'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

In this case, plaintiff has alleged fraud.  Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a claim of fraud must be pled "with particularity."  "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Wright and Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)), *appeal after remand*, 352 F.3d 908 (4th Cir. 2003).  In contrast, "conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive" are permitted.  *Harrison*, 176 F.3d at 784.  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Notably, "[e]ven where a plaintiff is proceeding *pro se,* the particularity requirements of Rule 9(b) apply."  *Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. DKC 10-3517, 2011 WL 3476994, *19 n.23 (D. Md. Aug. 8, 2011), *reconsideration denied,* 2011 WL 6837656 (D. Md. Dec. 28, 2011).

Generally, in resolving a motion under Rule 12(b)(6), a court may not consider extrinsic evidence.  But, if such evidence is "integral to and explicitly relied on in the complaint," and there is no challenge to authenticity, extrinsic evidence may be considered.  *Chesapeake Bay Foundation v. Severstal Sparrows Point,* 794 F. Supp. 2d 602, 611 (D.Md. 2011).  *See also Philips*, *supra,* 572 F.3d at 180; *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.  Accordingly, I will consider the exhibits that plaintiff appended to the Second Amended Complaint, without

converting the Motion to a motion for summary judgment, because these documents are integral to the Second AmendedComplaint and authenticity is not in issue at this juncture.

## Discussion

### *Count I*

In Count I, plaintiff alleges violations of various sections of the Maryland Code, including the prohibition against false advertising, Md. Code (2005 Repl. Vol.), § 12-602 of the Commercial Law Article ("C.L."); provisions not allowed in written instruments transferred from buyer to holder, C.L. § 12-607; the provision barring the collection of unauthorized charges in motor vehicle contracts, C.L. § 12-609(c); and the provision pertaining to assignment of motor vehicle retail installment agreements, C.L. § 12-609(g).

Defendant observes that C.L. § 12-602 "presupposes the existence of an 'advertisement' and section 12-607, as well as section 12-609, presuppose the existence of a retail installment contract." Memo at 3.  Yet, notes defendant, the Second Amended Complaint "fails to allege that CitiFinancial engaged in any form of advertising and repeatedly insists that the retail installment contract was 'void ab initio.'"  *Id.*

In the Second Amended Complaint, at ¶ 7, plaintiff cites C.L. § 12-602 in connection with the following statement: "The retail installment contract incepted via fraud on or around August 10, 2006 is **void ab initio** and Citi Financial Auto [sic] was fully aware there was no contract in place to justify their venal collection of monies from the Plaintiff." (Emphasis in original).  The statement does not refer to advertisements in any respect.  Because there are no facts in the Second Amended Complaint referring to advertisements, there is no ground on which to base a claim for false advertising under C.L. § 12-602.

Moreover, plaintiff does not refer to C.L. § 12-607 anywhere in the body of his Second Amended Complaint; the only reference to the statute appears under the caption for Count I.  The

only provision of C.L. § 12-607 that is in any way relevant to the facts as alleged by plaintiff appears in C.L. § 12-607(a)(1), which provides: "(a) A holder may not take or receive any instrument from a buyer…which contains: (1) …any blank space to be filled in after the instrument is signed by a party to it."

As noted, plaintiff complains that he entered into a retail installment sale contract with Lanham that was void at its inception, because the contract contained a signature next to, rather than on, the signature line for the seller.  Clearly, the signature, next to the word "by," indicated it was "by" the seller.  This does not invalidate the contract.  "A signature may be operative without respect to its position in the document…."  1 Corbin on Contracts § 2.10 (1993).   Nor was this the kind of "blank space" that is of the ilk addressed by C.L. § 12-607(a)(1), to prevent alteration of the terms after the buyer had already affixed his signature to the document.

Plaintiff also does not refer to C.L. § 12-609(c) or (g) in the body of his Second Amended Complaint.  Again, the only reference to these provisions is under the caption for Count I.

C.L. § 12-609(c) proscribes the collection of "a charge greater in amount than the maximum permitted by" C.L. § 12-609(a).  The Second Amended Complaint makes no allegations of unauthorized or excessive charges.  Nor does plaintiff allege the assignment of a retail installment agreement that failed to disclose the fact that the assignor was to "receive a portion of the finance charge," so as to constitute a violation of C.L. § 12-609(g).  The Seconded Amended Complaint contains no facts at all regarding the terms of the assignment at issue, let alone that Lanham was to "receive a portion of the finance charge."  *Id.*  These provisions of the Maryland Code do not appear to have any relation to the facts as alleged by plaintiff.

*Count II*

Count II alleges the violation of C.L. § 5-109, which pertains to "fraud and forgery" in letters of credit.  As defendant observes: "Nowhere in the [Second] Amended Complaint does Plaintiff

allege the existence of a letter of credit to which he or CitiFinancial was a party." Memo at 3.

In reviewing the Second Amended Complaint, it is apparent that it does not refer to any letter of credit, as defined by C.L. § 5-102(a)(10). In fact, the only reference to C.L. § 5-109 appears under the caption for Count II, unconnected to any supporting facts. Because plaintiff has not alleged facts that would support a claim that defendant committed fraud or forgery in connection with a letter of credit in violation of C.L. § 5-109, he fails to state a claim.

*Count III*

In Count III, plaintiff alleges the violation of C.L. §§ 14-202(3), (5), (6), (8), and (9). These provisions of Maryland's Consumer Debt Collection Act ("MCDCA") proscribe certain actions on the part of debt collectors. Plaintiff asserts: "The defendant Citi Financial Auto [sic] had no lawful delegation of authority to exercise such debt collection activities...." Second Amended Complaint ¶ 7. But, plaintiff does not specify what "debt collection activities" CitiFinancial "exercise[d]," apart from attempting to enforce the contract which plaintiff regards as "void ab initio." *Id.*

According to defendant, the Second Amended Complaint "is devoid of facts demonstrating that CitiFinancial violated any provision of the MCDCA. More specifically, Plaintiff has failed to allege any threat, abuse or disclosure of information…which could form the basis of a claim under" the named provisions of the MCDCA. Memo at 4.

Review of the Second Amended Complaint makes clear that plaintiff does not allege that CitiFinancial did "[d]isclose or threaten to disclose information which affects [plaintiff's] reputation for credit worthiness with knowledge that the information is false," C.L. § 14-202(3); "disclose or threaten to disclose to a person other than [plaintiff]…information which affects [plaintiff's] reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information," C.L. § 14-202(5); "Communicate with [plaintiff]…with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass [plaintiff], C.L. § 14-202(6); "Claim, attempt, or threaten to enforce a

right with knowledge that the right does not exist," C.L. § 14-202(8); or "Use a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not."  C.L. § 14-202(9). Indeed, none of these statutes has *any* factual grounding in plaintiff's submission.

Arguably, in a generous reading of the suit, plaintiff's allegations might fall within C.L. § 14-202(8), involving an attempt by a defendant to enforce a right with knowledge that it does not exist. But, the Second Amended Complaint contains an utterly conclusory allegation that "Citi Financial Auto [sic] was fully aware that there was no contract in place" on which it could attempt to collect. *Id*.  As noted, plaintiff's sole basis for this assertion appears to involve the matter of the particular line on which the disputed contract was signed on behalf of the seller.  As I have said, the alleged defect with respect to the signature line is insufficient to render the contract void.  Put another way, the allegations cannot state a claim because there is no factual basis from which to conclude that the contract was not enforceable.  It follows that CitiFinancial could not possibly have had "knowledge" that it was attempting to enforce a right that "does not exist."

Plaintiff has not alleged any other facts to support a finding that CitiFinancial's right to enforce the contract "does not exist."  Moreover, if plaintiff were correct, he would have no right to retain the motor vehicle—a glaring matter that he does not address in his suit.

*Count IV*

In Count IV, plaintiff alleges violations of C.L. §§ 13-301, 13-302, and 13-303, under the Maryland Consumer Protection Act ("CPA"), C.L. § 13-101 *et seq*.  As defendant observes, however, C.L. § 13-301 is merely "the definitional section of Title 13," and it defines more than forty unfair or deceptive trade practices.  Memo at 5.  Section 13-302 "merely instruct[s] that 'a violation of this title [occurs] whether or not any consumer in fact has been misled, deceived, or damaged.'" *Id*.  C.L. § 13-303 prohibits engaging "in any unfair or deceptive trade practice," as defined by C.L. § 13-301.

According to defendant, the statute "provides numerous definitions for unfair trade practices, yet Plaintiff has failed to specify which one he believes CitiFinancial violated." Memo at 5. Nor are the particular ones in issue apparent to the Court. Indeed, the only mention of the CPA in the Second Amended Complaint is found under the caption of Count IV, which simply states, "**Violation**: Maryland Consumer Protection Act." It then recites the three provisions discussed here, without any accompanying factual development. These claims cannot withstand challenge.

*Count V*

Count V alleges that the defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Specifically, plaintiff alleges the violation of 15 U.S.C. §§ 1692e and f, which prohibit various collections practices on the part of debt collectors. According to defendant, the Second Amended Complaint fails to allege that defendant engaged in any of the prohibited practices. Memo at 6.[10]

"To establish a FDCPA claim, a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC*, No. 10–1933, 2012 WL 268345, *4 n.3 (4th Cir. Jan. 31, 2012) (citation omitted). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce…in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). It excludes "any person collecting or attempting to collect any debt owed or due…to the extent such activity…concerns a debt which

---

[10] Defendant also contends that the Court's order to provide a more definite statement did not constitute leave for the plaintiff to amend to add new claims. Because defendant first invokes the FDCPA in the Second Amended Complaint, defendant urges the dismissal of Count V. Memo at 5-6. Defendant makes this same argument, in a footnote, with respect to Counts VI and VII. *See id.* at 6 n.1. As I ultimately find the Second Amended Complaint insufficient on other grounds, I need not address this contention.

was not in default at the time it was obtained by such a person."  *Id.* § 1692a(6)(F)(iii).

The Second Amended Complaint does not allege that defendant is a debt collector, or that plaintiff was in default.  Because plaintiff failed to allege that defendant is a debt collector, the suit is subject to dismissal with respect to claims under the FDCPA.

Moreover, the only mention of the FDCPA is found under the caption of Count V, which states, in its entirety, "**Violation**: FDCPA," and then lists, seriatim, several provisions of the FDCPA. No factual development is set forth.  Looking elsewhere in the Second Amended Complaint, plaintiff has failed to allege facts that suggest defendant engaged in any of the nearly twenty "false or misleading representations" or ten "unfair practices" proscribed by these provisions.  Therefore, this claim fails to satisfy the *Twombly-Iqbal* landscape.

*Count VI*

Count VI lodges claims for "Common Law—Fraud"  and violation of 18 U.S.C. § 1341, a criminal statute which prohibits "frauds and swindles" carried out through the use of the Postal Service.  In its challenge to Count VI, defendant relies on Fed. R. Civ. P. 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   According to CitiFinancial, "Plaintiff has utterly failed to meet this requirement," because he merely alleges that he was "defrauded" by CitiFinancial, without "identify[ing] which of the three types of fraud recognized under Maryland law…he believes CitiFinancial committed," and he failed to specify the "'content of the false misrepresentation'" of which he complains.  Memo at 7-8 (citation omitted).

The Court shares defendant's view that plaintiff's allegations of fraud are completely conclusory.  The suit lacks the particularized allegations required by Fed. R. Civ. P. 9(b).  *See Twombly,* 550 U.S. at 555.  As noted, plaintiff must allege "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what

he obtained thereby.'"  *Harrison*, *supra,* 176 F.3d at 784 (citation omitted).  Plaintiff does not allege that any actor affiliated with CitiFinancial misrepresented or concealed information from him, at any time.  In his Opposition, at 6, he argues that "defendant willfully committed fraud" because it "had full knowledge that the original seller Lanham Ford did not accept the contract," as "Lanham Ford did not sign where the contract instruction demanded their signature for acceptance of the contract," but CitiFinancial "accepted the void ab initio retail installment contract regardless of the fact there [sic] were bla[n]k space(s) to be filled in by the original seller, pertaining to the validity of the contract."  Without more, these allegations simply do not amount to an action in fraud.  As discussed, the contract was not void ab initio, because of the alleged defect related to the signatures.  If so, plaintiff would not be entitled to reap the contractual benefits by retaining the car, without paying for it.  Plaintiff has failed to allege any wrongdoing on the part of CitiFinancial.

Defendant further argues: "CitiFinancial is unaware of any civil cause of action under 18 U.S.C. § 1341, a criminal statute."  Memo at 8 n.5.  Again, I agree.

*Count VII*

Plaintiff alleges "Racketeering Activity," in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., in Count VII.  Specifically, plaintiff invokes 18 U.S.C. § 1964, which provides for civil remedies for RICO violations.

CitiFinancial argues: "To the extent that Plaintiff's RICO claims are based on extortion, as opposed to fraud, he has likewise failed to state a claim for which relief may be granted."  Memo at 8.  Defendant posits: "Nowhere in the [Second] Amended Complaint does Plaintiff even baldly allege that CitiFinancial used 'actual or threatened force, violence or fear.'"  *Id*.

(citation omitted).[11]

RICO is "'a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (citation omitted).  Because the penalties authorized by RICO are "drastic," in order "to provide society with a powerful response to the dangers of organized crime," courts "must…exercise caution 'to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions….'" *Id.*

To state a civil RICO claim, plaintiff must allege, *id.*,

> that the defendant[] engaged in, or conspired to engage in, a "*pattern* of racketeering activity."  18 U.S.C. § 1962 (emphasis added).  "Racketeering activity" includes "extortion," defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  *Id.* §§ 1951(b)(2) (defining extortion), 1961(1) (defining "racketeering activity" to include the offenses enumerated in § 1951).

In my view, plaintiff has not identified any facts that would implicate defendant in "a pattern of racketeering activity," or "organized, long-term, habitual criminal activity."  *Awappa*, 615 F.3d at 317.  This claim is devoid of the particulars required to satisfy the *Twombly-Iqbal* landscape.

### Conclusion

The Second Amended Complaint does not comply with the Federal Rules of Civil

---

[11] In its Reply, at 8, defendant also raises a statute of limitations issue.  But, "'[i]t is a well settled rule that contentions not raised in the argument section of the *opening brief* are abandoned.'"  *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 369 (4th Cir. 2008) (quoting *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) (emphasis added)).  *See also United States Secs. and Exch. Comm'n v. Pirate Investor LLC*, 580 F.3d 233, 255 n.23 (4th Cir. 2009) ("Ordinarily we do not consider arguments raised for the first time in a reply brief") (*citing Helping Hand, supra*, 515 F.3d at 369); *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered").

Procedure.   As the Court instructed the plaintiff in granting the motion for more definite statement, "It is not up to defendant to search through the Amended Complaint and attempt to connect facts to causes of action, leaving defendant to speculate as to plaintiff"s grounds for the various claims."   ECF 18.   Plaintiff has not cured the defect identified in ECF 18.   Rather, he has persisted in merely listing claims without connecting them to any facts, so as to support viable causes of action.   And, as discussed, *supra*, even with a liberal construction of the facts contained in the Second Amended Complaint, they do not support any of the claims plaintiff has lodged against defendant.

As noted, the purpose of Fed. R. Civ. P. 8(a)(2) is to provide a defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.   *Twombly,* 550 U.S. at 555-56 n.3.   The Second Amended Complaint does not contain facts sufficient to "state a claim to relief that is plausible on its face."   *Id.* at 570.   Acccordingly, defendant CitiFinancial Auto Corporation's motion to dismiss (ECF 22) is granted.   *See* Fed. R. Civ. P. 41(b); Fed. R. Civ. P. 59(e).   A separate Order follows.

Date: May 18, 2012                                          /s/
                                        Ellen Lipton Hollander
                                        United States District Judge